UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOY SAMPSON,

      Plaintiff,

                                        Case No. 22-10879

v.

                                        Hon. George Caram Steeh

FLEX N GATE NINE
MILE LLC, *et al.*,

      Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 30)

Before the court is Defendants Flex N Gate Nine Mile, LLC, Flex N Gate Royal Oak, LLC, Flex N Gate, LLC, and Flex N Gate Michigan, LLC's motion for summary judgment. For the reasons explained below, Defendants' motion is granted.

## BACKGROUND FACTS

Joy Sampson alleges that her former employer, Flex N Gate Nine Mile, LLC ("FNG Nine Mile"), discriminated against her when it terminated her employment. FNG Nine Mile is an automotive parts manufacturing plant in Warren, Michigan. Sampson began working there in 2003 as a Shipping and Receiving Coordinator and was promoted to Materials Manager in 2012.

In 2015, Anthony Spalding became the Plant Manager at FNG Nine Mile. Sampson reported to Spalding, along with one other female and six male managers. Sampson and Spalding had a difficult working relationship. Sampson asserts that Spalding made belittling comments to her, allowed male managers to talk over her, and yelled at her all of the time. In his first review of her work, Spalding rated Sampson as "needs improvement." ECF No. 30-6 PageID 226. In late 2015, Sampson's production scheduling duties were transferred to another employee, Jeff Wisniewski. ECF No. 30-7 PageID 314. Around that time, Spalding emailed a supervisor that he was "having some pretty serious issues with Joy. She is struggling to perform at the level needed/expected." *Id.* at PageID 335.

On May 9, 2016, Spalding placed Sampson on a performance improvement plan, based upon his view that she needed to improve in the following areas: communication, accuracy, respect toward others, accountability, and awareness of her department. ECF No. 30-6 at PageID 260-61. Sampson submitted a written response, noting her disagreement with several items as well as Spalding's management style. *Id.* at PageID 262-66. However, at her next review in October 2016, Spalding assigned her the rating "meets expectations" and commended Sampson on her performance improvement. ECF No. 30-6 at PageID 273.

-2-

In August 2017, Sampson was at a management meeting attended by Spalding and others, including the Director of Manufacturing, Pierre Taouil. She alleges that Taouil "pretty much yelled at everyone" during the meeting, then turned to her and pointing his finger in her face, saying "You're going to answer my questions with a yes or no." ECF No. 30-6 at PageID 76-77. Sampson responded "ok," then left the meeting and the plant, quitting on the spot. She felt that more of Taouil's anger was aimed at her rather than her male counterparts. *Id.* at PageID 80-81.

Sampson testified that in 2018, Taouil and Spalding contacted her to ask her return to work at FNG Nine Mile. ECF No. 30-6 at PageID 193. She agreed and began work on March 26, 2018, as a Materials Coordinator, then resumed her position as Materials Manager. Spalding stated that he believed that Sampson could provide immediate assistance with a new product launch because she was already proficient in the plant's planning software. ECF No. 30-5 at PageID 167. However, a former employee, HR Manager Regina Harrison, testified that Spalding was openly angry about Sampson's return, and that he "was not happy that Pierre [Taouil] went above him and invited Joy back to the company." ECF No. 30-10 at PageID 14-15.

Sampson testified that her working relationship with Spalding was the "same" as before she left in 2017, although he no longer yelled at her. He excluded her from management meetings and she described their relationship as "distant" in that "he chose to just stay away from me." ECF No. 30-6 at PageID 194-95. Although Spalding never made any gender-based comments to her, Sampson had a "gut feeling" that he treated her differently because of her sex. *Id.* at 196.

At the end of 2018, Spalding rated Sampson as a "solid performer" in her review, the equivalent to "meets expectations." ECF No. 30-6 at PageID 276-80. He noted that "Joy chose to leave the company in a rather abrupt manner earlier in the year, but then decided she would like to come back." *Id.* at PageID 276. He stated that "we need improvement in the accuracy of our inventory," but praised Sampson as "very knowledgeable" and noted that she "makes good solid decisions" and "does a good job of leading her team." *Id.* at 277-79.

In the spring of 2019, the company forecasted a drop in sales and decided to trim labor costs. Spalding testified that the Director of Manufacturing, Mike Hartman, asked him to create a plan reduce labor

costs at FNG Nine Mile.[1] Spalding identified five positions that he believed could be eliminated without negatively affecting production. ECF No. 30-2. One of those positions was open and would not be filled. The other four positions were held by Sampson and three men. Spalding created a chart showing the five positions that would be reduced on May 8, 2019. *Id.*; ECF No. 31-12 ("Joy's position was one of several that we will be eliminating or moving."). According to Spalding, Sampson was chosen for the reduction in force because of her job performance. He planned for Sampson's Material Manager duties to be performed by Jeff Wisniewski, who was the Customer Service Manager.

The reduction in force was not implemented until August 2019. In the meantime, one of the individuals identified for the reduction in force quit. John Saenz, a white male, was transferred to another position in Grand Rapids. Of the five positions to be eliminated, the only two employees to be terminated were Sampson and Ronald Smith, a black male. According to an email sent by Spalding, "Corporate HR . . .  asked that we move all three [Saenz, Smith, and Sampson] at the same time to show evidence that we are not picking on the minority folks." ECF No. 31-14 at Page ID 491.

---

[1] Plaintiff contends that Spalding conceived of the reduction in force, based upon FNG's statement to the EEOC that "[t]he General Manager [Spalding] identified the need to reduce labor cost." ECF No. 31-13 at PageID 487.

Smith was terminated on August 30, 2019. Sampson was not in the office that day and was informed of her termination when she returned, on September 3, 2019.

After Sampson's termination, Wisniewski took on the responsibilities of the Materials Manager as well as those of the Customer Service Manager. ECF No. 30-8 at PageID 343. In Spalding's opinion, Wisniewski could perform both roles without adversely affecting production, but "not vice versa." ECF No. 30-2 at PageID 155. At that time, Wisniewski received a pay increase to about $88,000 annually, which is the amount Sampson was making before her termination. ECF No. 30-8 at PageID 342.

On September 13, 2019, Sampson sent an email to various contacts at FNG explaining that she was looking for a job. Karrie Eilers, the Materials Manager at FNG Royal Oak, responded and asked Sampson to meet with her regarding a Shipping Supervisor position at that plant. By email, Eilers offered Sampson the position and Sampson accepted, although Sampson did not receive a formal offer letter. ECF No. 30-6 at PageID 283-84. Eilers expected that the current Shipping Supervisor would be moving to a new position as the plant opened a new line. ECF No. 31-27. However, due to changes in demand, a current project was extended and there was no room for the anticipated new line. ECF No. 31-31 at

-6-

PageID 799. As a result, the Shipping Supervisor position Sampson interviewed for and others were put on hold. *Id.* On September 23, 2019, Eilers sent an email to Sampson stating, "Everything was squashed so I can't hire you now." ECF No. 30-6 at PageID 283. She did not elaborate on what was "squashed," because the change reflected confidential customer information. ECF No. 30-9 at PageID 352. Nonetheless, on September 26, 2019, Eilers interviewed another candidate, a man. However, the position Sampson was offered was not filled and did not become available until August 2020. ECF No. 31-31 at PageID 799.

Around the time Sampson was applying for the job at FNG Royal Oak, Spalding sent emails asking whether she had signed her severance package, which would preclude her from working at FNG. Sampson did not ultimately sign the severance package. According to Eilers, she did not discuss the possibility of hiring Sampson with Spalding, although before interviewing her she confirmed with HR that Sampson was terminated in a work force reduction rather than for cause. ECF No. 31-27.

Sampson filed her complaint against Defendants on April 25, 2022, alleging claims of sex discrimination and retaliation under federal and state law as well as violations of the Americans with Disabilities Act, Persons with Disabilities Civil Rights Act, and Family and Medical Leave Act. She

-7-

has conceded the dismissal of her retaliation, disability, and FMLA claims,
pursuing only her claims of sex discrimination.[2]

## LAW AND ANALYSIS

Summary judgment is appropriate if "there is no genuine issue as to
any material fact and . . . the moving party is entitled to a judgment as a
matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary
judgment, the court must determine "'whether the evidence presents a
sufficient disagreement to require submission to a jury or whether it is so
one-sided that one party must prevail as a matter of law.'" *Amway Dist.
Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003)
(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).
The facts and any reasonable inferences drawn from the facts must be
viewed in the light most favorable to the nonmoving party. *Matsushita Elec.
Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In
response to a properly supported motion for summary judgment, the
opposing party must come forward with specific evidence showing there is
a genuine issue of fact for trial. *Anderson*, 477 U.S. at 252.

---

[2] The court has omitted facts pertinent to the abandoned claims, in pursuit of a
more concise recitation.

To establish a prima facie case of discrimination under Title VII or ELCRA, a plaintiff must show that 1) she is a member of a protected class; 2) she was qualified for the job and performed it satisfactorily; 3) despite her qualifications and performance, she suffered an adverse employment action; and 4) she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside of her protected class. *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014); *Humenny v. Genex Corp.,* 390 F.3d 901, 906 (6th Cir. 2004) (analysis is the same under Michigan and federal law). In the case of a work force reduction, the test is modified. *Rachells v. Cingular Wireless Employee Servs., LLC*, 732 F.3d 652, 661 (6th Cir. 2013) (citing *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990)). Instead of the fourth element, a plaintiff must marshal "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes*, 896 F.2d at 1465. The fourth element is modified to take into account that "[w]hen an employer is forced to reduce its staff for economic reasons, the most common legitimate reason for the discharge is the RIF itself." *Id.*

The Sixth Circuit has defined the parameters of a legitimate reduction in force:

> A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Barnes,* 896 F.2d at 1465.

Although the parties disagree as to whether FNG Nine Mile carried out a bona fide reduction in force, it is undisputed that FNG Nine Mile reduced its payroll by five positions through attrition, transfer, and the termination of two employees.[3] Plaintiff contends that her position was not eliminated and that she was replaced by Jeff Wisniewski, who assumed the title of Materials Manager. Wisniewski and Spalding testified, however, that in "replacing" Sampson, Wisniewski took on her duties as well as his own. ECF No. 30-8 at PageID 343; ECF No. 30-2 at PageID 155. Plaintiff has not rebutted this testimony. Since Wisniewski absorbed Sampson's duties

---

[3] Spalding testified that his supervisor, Mike Hartman, asked him to create a plan to reduce labor costs. Plaintiff asserts that FNG's EEOC statement references Spalding as the one who "identified the need to reduce labor cost," and argues that this inconsistency casts doubt on the legitimacy of the reduction in force. Whether the idea originated with Hartman or Spalding is not material to whether FNG Nine Mile genuinely sought to reduce labor costs. Plaintiff has not cast doubt on the sincerity of this effort.

and continued to perform his own, he did not "replace" Sampson as a matter of law.

Accordingly, to establish a prima facie case, Plaintiff must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled [her] out . . . for discharge for impermissible reasons." *Barnes*, 896 F.2d at 1465. For example, in an age discrimination case, a plaintiff might show that she "possessed qualifications superior to those of a younger co-worker working in the same position" or that "the employer made statements indicative of a discriminatory motive." *Id.* at 1466. "The guiding principle is that the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of [sex]." *Id.*

Relying primarily on the argument that the reduction in force was not bona fide, Plaintiff has not fully developed the claim that she meets the heightened prima facie case required for a bona fide RIF. *See* ECF No. 31 at PageID 418-19 & n.5. She asserts that she was more qualified than Wisniewski, based upon her greater years of service, but she does not address the non-discriminatory reasons that Spalding articulated for choosing Sampson for the RIF. Spalding testified that he chose Sampson for termination because she had previously abruptly left the company, had

-11-

a history of performance issues, and Wisniewski had already assumed some of her duties and Spalding believed that he could successfully take over the rest of her tasks. ECF No. 30-2 at PageID 155; ECF No. 30-7 at PageID 307. Sampson has not shown that these reasons did not actually motivate Spalding's decision. It is "the manager's motivation that is the key factor, not the employee's perception" of her qualifications or performance. *Mynatt v. Lockheed Martin Energy Sys., Inc.*, 271 Fed. Appx. 470, 477-78 (6th Cir. 2008) (citation omitted). Indeed, a "plaintiff's contention that he was better qualified than the workers who were retained is insufficient to establish a prima facie case" and "an employee's evaluation of his own performance or qualification is irrelevant as a matter of law." *Id.* (citing *LaGrant v. Gulf & Wester Mfg. Co., Inc.*, 748 F.2d 1087, 1091 (6th Cir. 1984) and *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987)); *Browning v. Dep't of Army*, 436 F.3d 692, 697 (6th Cir. 2006) "'[T]he employer's motivation, not the applicant's perceptions, or even an objective assessment [ ] of what qualifications are required for a particular position,' is key to the discrimination inquiry."). Although a plaintiff in an RIF case may establish a prima facie case by demonstrating that she was a clearly superior performer compared to similarly situated employees who were retained, Sampson has not attempted to make such a showing here. *See*

-12-

*Camalo v. Xerox Corp.*, No. 16-CV-13667, 2019 WL 764222, at *3 (E.D. Mich. Feb. 21, 2019) (citing *Rachells v. Cingular Wireless Employee Servs., LLC*, 732 F.3d 652, 663-64 (6th Cir. 2013)).

As evidence that Spalding was motivated by her sex, Sampson points to his behavior towards her, such as yelling and belittling comments, or distancing himself and excluding her from meetings. Although it appears that Sampson and Spalding had a difficult working relationship, Sampson does not identify comments or behavior on Spalding's part that creates an inference that he was motivated by discriminatory animus. *See Knox v. Neaton Auto Prod. Mfg., Inc.*, 375 F.3d 451, 457 (6th Cir. 2004) (showing of "sex-neutral animus" insufficient to support prima facie case); *Barnett v. Dep't of Veterans Affs.*, 153 F.3d 338, 343 (6th Cir. 1998) (noting that "personal conflict does not equate with discriminatory animus").[4]

Plaintiff also argues that a male colleague, John Saenz, was treated more favorably because he was not terminated but was transferred to another plant. However, she does not demonstrate that she is similarly situated to Saenz or that there was an available position to which she could

---

[4] Defendant argues that a finding of discrimination should be precluded by the "same actor inference," which arises when "the same person hires and fires the plaintiff." *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 573-74 (6th Cir. 2003). Because there is some dispute regarding whether Spalding was the decisionmaker with respect to Sampson's re-hiring in 2018, the court will not apply the inference.

have been transferred. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 351 (6th Cir. 1998).[5] In this regard, Plaintiff's perfunctory arguments do not show that she was singled out because of her sex. Plaintiff has not met her burden of presenting a prima facie case.

Nor has Plaintiff shown that FNG Nine Mile's reasons for her termination were pretextual. There is no evidence, as Plaintiff argues, that Spalding conceived of the RIF as a sham to terminate Sampson. Plaintiff attempts to cast doubt on the reasons for her selection, arguing that there are inconsistencies in Defendant's narrative. For example, she argues (contrary to her own testimony) that Spalding did not ask her to return to FNG Nine Mile in 2018 and was unhappy that she was rehired. Assuming this is true, it does not raise an inference that Sampson was later chosen for the RIF because of her sex. She also points out that FNG Nine Mile has taken the position that she was not terminated for performance issues. FNG Nine Mile's positions are not inconsistent, however. Defendant

---

[5] "[A] plaintiff denied an opportunity to transfer establishes a prima facie case of . . . discrimination when he or she produces evidence demonstrating that 1) he or she is a member of a protected class; 2) at the time of his or her termination he or she was qualified for other available positions within the corporation; 3) the employer did not offer such positions to the plaintiff; and 4) a similarly-situated employee who is not a member of the protected class was offered the opportunity to transfer to an available position, or other direct, indirect, or circumstantial evidence supporting an inference of discrimination." *Ercegovich*, 154 F.3d at 351.

maintains that Sampson was not fired for poor performance or for cause, but that her job performance played a role in Spalding's decision to include her in the RIF; these positions may coexist without tension.

She presents several additional arguments, some of which are not supported by the record. For example, she contends that she was replaced by Wisniewski, who had less seniority and was paid more than she was. As discussed above, Sampson was not "replaced" as defined in the caselaw, and Wisniewski was paid about the same amount as Sampson at the time she was terminated.

Sampson also suggests that the RIF was "suspicious" to its own personnel, because HR advised Spalding to "move" a white male employee, along with Sampson and Smith, "to show evidence that we are not picking on the minority folks." ECF No. 31-14. In context, however, this directive relates to the timing of the personnel actions, not their substance or the genuineness of the RIF. *Id.* None of FNG Nine Mile's employees voiced concerns that the RIF was "suspicious."

Sampson further surmises that because Spalding inquired about whether she signed her severance package, he was actively attempting to prevent her from obtaining another position at FNG. Assuming this was the case, there are no facts suggesting a discriminatory motive. In addition,

there is no evidence that Spalding had any involvement in the rescinded job opportunity at FNG Royal Oak.

In this regard, Plaintiff's pretext argument rests primarily on inferences that do not reasonably arise from the facts on record and is not well taken. Plaintiff has not raised a genuine issue of material fact that her termination was motivated by her gender.

Plaintiff also alleges that the failure of FNG Royal Oak to hire her for the Shipping Supervisor position was discriminatory. To establish a prima facie case for a failure to hire, the plaintiff must show that, after she was rejected, the employer either (1) filled the position with someone outside of the plaintiff's protected class . . . or (2) kept the position open and continued to seek other applicants. *George v. Youngstown State Univ.*, 966 F.3d 446, 470 (6th Cir. 2020). Plaintiff asserts that she has established a prima facie case because after she was told everything was "squashed," Eilers interviewed a man for the job. Assuming Plaintiff has satisfied the prima facie case, she has not shown that FNG Royal Oak's reason for not hiring her – the change in business circumstances – was pretextual. Plaintiff has not presented evidence casting doubt on this reason or upon the fact that the position did not become available as Eilers initially expected.

-16-

## <u>CONCLUSION</u>

Because Plaintiff has failed to raise an inference that either her

termination or the failure to hire her was motivated by her gender, IT IS

HEREBY ORDERED that Defendants' motion for summary judgment is

GRANTED.

Dated: July 20, 2023

<u>s/George Caram Steeh</u>
HON. GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 20, 2023, by electronic and/or ordinary mail.

<u>s/Mike Lang</u>
Deputy Clerk